SCHUMACHER, d. b. a. PERFECTION HEATING AND ENGINEERING CO., Plaintiff-Appellee, v. IRON FIREMAN MANUFACTURING COMPANY, Defendant-Appellant.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23609.   Decided April 25, 1956.

Richard J. Moriarty, for plaintiff-appellee.

Davies, Eshner, Johnson & Miller, Francis B. Douglass, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal comes to this Court on questions of law from a judgment entered on the verdict of a jury for the plaintiff, the action being for money only.

The plaintiff, a heating contractor, alleges that he bought an FGF-120 Gas Furnace from the defendant. He further alleges that he sold the furnace to one Gunter and installed it in Mr. Gunter's home, together with the necessary sheet metal piping or ducts and performed all of the other work necessary to provide a proper hot air heating system in the Gunter home, including connecting the fume outlet built into the furnace to the vent or chimney constructed by Gunter.

It is the claim of the plaintiff that when put in operation, the furnace emitted oily soot, dirt and vile and dangerous and noxious gas through the hot air registers, damaging the walls and furnishings of the Gunter home.

The petition alleges the defendant tried to adjust the operation of the furnace without success. The petition then asks damages in the amount of $741.00, which is alleged to be the cost of the furnace—$241.00, and the cost of the duct work and service of the plaintiff in making adjustments, totaling $500.00.

The evidence, not in dispute, establishes that the plaintiff, a heating contractor, fully cognizant of what he was buying, purchased the furnace by the manufacturer's designation of FGF-120 Iron Fireman from the defendant. After the purchase, the plaintiff contracted with one, Dean Gunter, to install the heating system in a new home he was constructing, located at 563 Humiston Drive in Bay Village, Ohio, that the plaintiff showed Dean Gunter several furnaces and that he picked out the furnace above described. Dean Gunter testified that he was in the business of selling kitchen equipment and some furnace equipment. The plaintiff installed the furnace, together with all necessary hot air pipes, cold air drops and the like, and a mason sub-contractor of Gunter built the chimney according to specifications furnished by him and that the furnace was vented by a six inch galvanized pipe to this chimney. The furnace was installed "a little early because we got to the plastering stage" and the furnace was needed to dry the plaster. The installation was finished sometime in November, 1948. Thereafter, a hot water heater with a three inch vent and an incinerator with a six inch round metal vent were both vented to the same chimney.

The furnace was put into immediate operation, that is, before the owner moved in (which was in February, 1949), and within three weeks or a month there was a deposit of black oily soot on the plaster above the hot air registers and in other places about the house. This fact was noted both by Gunter and the plaintiff. The house was completed after noting this condition, the papering being put over the soot covered plaster.

After the owner moved in, he complained to the plaintiff about the continued emission of oily soot. He testified: "At that point, I asked if he (the plaintiff) would be good enough to replace the furnace or take it out and get something else." This was in March or April of 1949. Thereafter, the defendant was contacted and a service man was sent out to the Gunter home who recommended, and there was subsequently installed, a cold air return on one side to take the place of one of the cold air drops. The owner then testified that the same condition continued. It is also clear that other heating men were called to make

changes in the furnace subsequent to the service call of the defendant and at some subsequent time (1953) a metal chimney six inches in diameter was installed and used exclusively to vent the furnace. The furnace unit as originally installed, with the exception of some renewed electrical controls, was still in use in the Gunter home upon the filing of this case on April 12, 1954, or five and one-half years after the first complaint was made that it did not operate properly.

The plaintiff testified that he put in the duct work at an expense of $400.00. There is no denial of the fact that the installation of the duct work was satisfactorily done and that it was and still is a necessary part of the heating system of the house. There is direct conflict as to whether there was a leak in the combustion chamber of the furnace. The plaintiff testified that he conducted a "Wintergreen" test which disclosed to him that there was a leak in the combustion chamber. He had testified previously that when the furnace was put in operation, he ran a $CO_2$ test to be sure everything was all right and in answer to the question: "Was the furnace of the Gunter's as installed by you and tested by you operating properly?" He answered: "Yes, it was."

The defendant's engineer, just shortly before this case came to trial, made an examination of the furnace combustion chamber for leaks with the light test and found no leaks. This evidence is given great support by the fact that the plaintiff did not replace the combustion chamber and it was still in use as originally installed three months before this trial.

Another serious conflict in the evidence has to do with the sufficiency of the chimney as installed by Gunter. The plaintiff and other witnesses who testified in his behalf said the inside of such masonry chimney measured 6 x 8 inches and was without any obstructions when tested by the use of a mirror. They would not swear, however, that they made measurements to make sure of its size. The defendant produced two witnesses who testified that they measured the chimney and the measurements were 12 x 16 inches on the outside which with the flue lining would make it 3 x 7 inches on the inside and that by the use of a mirror, they could tell that the flue was partially blocked with plaster. These witnesses testified a 21 square inch flue opening was not sufficient to vent the furnace. It was testified that the furnace is provided with what is called a "draft converter or diverter" to safeguard against flue obstructions and down drafts; that when the venting of the furnace was changed from the masonry chimney to the metal chimney, the draft diverter was moved from one side of the furnace to the other and that on the ceiling above where it had been installed when vented to the masonry chimney, there was a large deposit of soot but that there was no discoloration of the ceiling above the place where it was located when the metal chimney of proper size was installed (1953), the witnesses having made the inspection before trial in 1955.

The defendant claims the following errors:

"1. The Court erred in overruling Defendant-Appellant's Demurrer to the territorial jurisdiction of the Court;

"2. The Court erred in overruling Defendant-Appellant's objection to the introduction of testimony on the ground that the Petition did not state a cause of action;

"3. The Court erred in failing to grant Defendant-Appellant's Motion for a Mistrial because of improper statements made by the Plaintiff-Appellee in the presence of the jury;

"4. The Court erred in admitting testimony of conversations between Dean W. Gunter and Fred Fenker not in the presence of the Defendant-Appellant;

"5. The Court erred in ruling that Ardon Barnes qualified as an expert witness on furnace equipment, installation and operation;

"6. The Court erred in permitting hypothetical questions in the forms submitted to be asked of and answered by Ardon Barnes and Edwin Schumacher;

"7. The Court erred in permitting Plaintiff-Appellee to introduce evidence over the objection of Defendant-Appellant, which rulings were prejudicial to the rights of the Defendant-Appellant;

"8. The Court erred in excluding evidence offered on behalf of the Defendant-Appellant;

"9. The Court erred in overruling Motion for a Directed Verdict by the Defendant-Appellant at the close of Plaintiff-Appellee's testimony;

"10. The Court erred in refusing to submit special findings of fact numbers 1, 2 and 3 to the jury;

"11. The Court erred in overruling a Motion by Defendant-Appellant for judgment non obstante veredicto;

"12. The Court erred in overruling Defendant-Appellant's Motion for a New Trial;

"13. The Court erred in its charge to the jury;

"14. The verdict of the jury is contrary to law;

"15. The verdict of the jury is manifestly against the weight of the evidence;

"16. And further errors apparent on the face of the record."

Error No. 1 must be overruled. It is true that the Municipal Court of Parma was without jurisdiction of the defendant, a resident of Cleveland, as determined by this Court in the case of **Gibson v. Summers Construction Co.**, 96 Oh Ap 307, 119 N. E. 2nd 637 (affirmed by the Supreme Court 163 Oh St 220). But the defendant submitted to the court's jurisdiction by seeking and being granted leave to plead. See also: **Brundage v. Biggs,** 25 Oh St 652.

In the case of **Long v. Newhouse et al.,** 57 Oh St 348, the second paragraph of the syllabus provides:

"2. In order to enable a defendant to object to the jurisdiction of the court over his person, the objection must be made at the earliest opportunity of the party. If before making such objection, the party appears and makes a motion that the plaintiff be required to attach an account of the items of his claim to his petition, or, that he be required to separately state and number his causes of action, or, that he be required to strike certain matter from his petition, in either of these cases, the party voluntarily submits himself to the jurisdiction of the court, and he cannot afterwards be heard to object thereto."

The defendant's claim that the plaintiff's petition does not state a cause of action is well taken. The petition alleges that defendant war-

ranted the furnace but alleges no defect in the furnace which would constitute a breach of such alleged warranty, which as pleaded, constituted a legal conclusion and not a statement of fact. No defects in the furnace are alleged as facts causing the emission of soot to his damage. The damage, if any, was likewise pleaded as being suffered by Gunter, not the plaintiff. In the case of **Federal Ins. Co. v. International Harvester Co., 91 Oh Ap 369,** this Court said in the first paragraph of the syllabus:

"1. Where a manufacturer sold trucks under a written contract containing an express warranty that they were free from defect in material and workmanship and reciting that the seller's obligation under the warranty was 'limited to making good at its factory any part or parts thereof which shall be returned to it with transportation charges prepaid, and which its examination shall disclose to its satisfaction to have been thus defective,' and a petition by the subrogee of the buyer against the seller alleged that it was impossible to comply with the condition in the warranty regarding the return of the defective parts and that defendant, by its conduct, waived compliance with the condition, the allegations constituting legal conclusions were not admitted by demurrer and the petition fails to set forth a cause of action, in that it fails to allege circumstances constituting a waiver of the conditions of the express warranty pleaded."

The question of damages will be considered hereafter. Because of the failure to allege damages as a result of specific defects, the petition is also defective and does not state a cause of action. **Willeke v. Neuenschwander, 55 Oh Ap 527.**

The third claim of error has to do with the refusal to declare a mistrial because of plaintiff's conduct in the presence and hearing of the jury. The record shows that as the jury was dismissed for the noon recess on May 26th, which was the first day of trial, before the jury had left the courtroom, the attorney for the plaintiff, in a loud voice, said: "We are pulling another Iron Fireman burner next week." A motion for mistrial was made and overruled. The argument on this question when presented to us was factually quite different as to the speaker and the circumstances then existing but we are bound by the record certified to us by the trial judge which is as just stated. Such a statement, in the hearing of the jury, would indeed be prejudicial. We must, therefore, sustain this claim of error.

Assignment of error No. 4 is overruled. It is based on receiving in evidence conversations between Gunter and the salesman of the defendant who sold the furnace to the plaintiff. While in a technical sense this evidence was hearsay, yet the greater part of it received, together with the conduct of the parties with respect thereto, shows that the defendant was not prejudiced by its submission to the jury.

Errors No. 5 and No. 6 deal with the qualification of an expert witness presented by the plaintiff, permitting the witness and the plaintiff to answer a hypothetical question dealing with the color of the flame produced by the gas burner in the furnace and the conclusions to be deducted as to whether or not soot would be formed in the combustion chamber because of the absence of a primary air adjustment in the

construction of the burner which burned with a yellow flame. These questions were for the jury under proper instructions by the court. These claims of error are, therefore, overruled.

Errors No. 7 and No. 8 deal with the admissibility of evidence, first as to the evidence of damage tendered by the plaintiff and second as to a descriptive booklet describing the construction of FGF series radiant gas furnaces of the defendant, one of which is the subject of this case.

The evidence of damage objected to by the defendant was highly prejudicial to it. The plaintiff's evidence received by the court on this subject was the selling price of the furnace and the expenses incurred by the plaintiff in installing the duct work in the Gunter house as representing his damage. These costs were in no way related to the damages claimed for an alleged breach of warranty as to the suitability of the furnace as a house heating unit.

The defendant had absolutely nothing to do with the hot air pipe or duct work installed in the Gunter home by the plaintiff and whether the furnace purchased was usable or not, the cost of such work was no more related to the question of plaintiff's damage as the issues are here presented than the cost of the plumbing or the construction of any other part of the house. To heat a house with hot air, hot air pipes are necessary. They were installed by the plaintiff and are now in the house as a necessary part of it. If they were improperly installed, the defendant who took no part in their construction could not be held responsible. The introduction of such evidence cannot be justified on any grounds.

Permitting evidence to be presented to the jury as to the cost of the furnace as evidence of damage in a breach of warranty case was equally prejudicial. Whether the plaintiff paid too much or too little for it can never be an issue in an action claiming a breach of warranty. The measure of damages in an action of this kind is spelled out in the Uniform Sales Code of this State. Secs. 1315.70 and 1315.71 R. C. The first of these sections provides three remedies for an action claiming breach of warranty, each one of which is exclusive of the other. They are: "recoupment," "action for damages" or "counterclaim against action for the price," and "rescission." In this case the facts preclude the possibility of seeking either recoupment or rescission. The measure of damages permitted in an "action for damages" is provided for in the last two paragraphs of the section.

"The measure of damages for breach of warranty is the loss directly and naturally resulting, in the ordinary course of events from the breach of warranty.

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

Sec. 1315.71 R. C., provides:

"Secs. 1315.01 to 1315.76, inclusive, R. C., do not affect the right of a buyer or a seller to recover interest or special damages in any case

where interest or special damages may be recoverable, or to recover money paid when the consideration for the payment of it has failed."

The measure of damages that is applicable here, therefore, is the difference between the value of the furnace if it had been as represented by express or implied warranty and the value of that which was actually delivered, plus any consequential damage as may have resulted from the use of the furnace sufficiently long to discover a defect, if any, and a reasonable time thereafter to replace the defective part or if necessary, to replace the furnace.

Here the plaintiff's rights can rise no higher than those of the owner of the property who must act with due diligence so as not to increase the damages resulting from a claimed breach of warranty. The facts in this case conclusively show that the claimed defective part is still in use more than five and one-half years after it was alleged that both the plaintiff and Gunter discovered it. Under these facts, any consequential damage recoverable could not extend beyond a time that would be reasonably necessary to correct or replace the furnace if in fact such action could be justified. Nor may the plaintiff, as purchaser, make a settlement with the owner as sub-purchaser that is satisfactory or agreeable to them and allege such settlement as his measure of damages against the original seller. The measure of damages for alleged breach of warranty in the sale of personal property is one of legal determination under the rules provided by the Sales Code and not otherwise. Evidence of any repayment of the purchase price or cost to him by a purchaser of alleged warranted goods voluntarily made is not admissible to establish damages against the original seller under any circumstances without showing that such amount is in fact the damages recoverable under the law and the facts.

In the case of Lucas v. Kemmerling Co., 115 N. E. 2nd 17, this Court said on page 18:

"This action is an original one by the buyer seeking damages, for breach of warranty so that his damages, if established, would be the difference between the value of the truck, if it had been as represented, and its value as received."

In the case of **Hedeen v. Bausinger, 28 Oh Ap 336, 162 N. E. 650**, the first paragraph of the syllabus provides:

"1. In action for breach of contract of warranty in sale of second-hand truck, measure of damages, so far as general damages are concerned, is difference, if any, between actual market value of truck at time and place of sale, and what would have been its fair market value at time and place of sale if it had been as warranted."

and in **Hirschl, etc. v. Richards, 28 Oh Ap 38**, 162 N. E. 616, the court said on page 41:

"Now the record shows that this furnace was installed under a contract of warranty, and the evidence from the experts shows that it would have cost in all about $50.00 to put this furnace in such a condition that it would comply with the warranty. It must be remembered that this furnace was installed, and still remains installed, in that house, and, so far as it appears, is doing the work for which it was purchased

and installed. There never was any offer to return this property, and the result of the lawsuit is to the effect that the defendants have the furnace installed in their house and have a judgment to recover the money that had been paid upon it, and this, too, it must be remembered, without any rescission of the contract, offer to rescind, or offer to put the other person in statu quo. If there was a breach of the warranty as to what this furnace would do, that could be compensated as damages. The defendant should have proven his damages, and would have been entitled to recoupment to that extent, and no more. In any event, he was not entitled to recover the money back and keep the furnace, too."

Any claim for consequential damages in the sale of personal property where breach of warranty is claimed must be limited to such damages as are suffered when ordinary care is exercised in discovering the defect, if any, and like care in providing against such defect by repair or replacement with reasonable dispatch. Reasonable conduct is required on the part of the purchaser in claiming damages for breach of warranty where the right of rescission is waived and where the goods have been resold by the original purchaser, he is limited, in an action against the original seller, in any claim for damages for breach of warranty to the actual damage that could legally be recovered against him by the subpurchaser under like warranty obligations.

In the case of **Foundry Co. v. Stone Co., 92 Oh St 76, paragraphs 2, 3,** and 4 of the syllabus provide:

"2. Where, in an action for damages for breach of warranty, it is claimed by the purchaser that the defective machinery, covered by the warranty, delayed the operation of the factory of which it is a part, and it appears from the evidence offered by the purchaser that other causes contributed to the delay, the burden is upon the purchaser to show, by a preponderance of the evidence, what part of the delay was caused by the defect in the machinery warranted and what damages, if any, were sustained by reason of the delay so caused.

"3. Where an article covered by a contract of warranty is purchased for the purpose of being used as a separate unit in a factory, and the operation of the whole factory depends upon this unit properly performing its part, both in quantity and kind, with the other parts, the purchaser cannot retain this article in place in his factory for an unlimited time after discovering that it is defective and recover as damages the daily loss in the operation of the entire factory, but must within a reasonable time substitute a machine, in place of the defective one, that will do its part of the entire work without delaying the operation of the other parts.

"4. If the purchaser elects to retain such defective machinery as a part of his factory, notwithstanding its failure to produce the quantity of the product manufactured by the factory that it is warranted to do, his recovery is limited by the provisions of **division (a), paragraph (1) of §8449 GC,** to a recoupment in diminution or extinction of the price paid therefor."

Many cases in support of these rules of law will be found in 33 A. L. R. 2nd 501 in the Annotations beginning at page 511. Also 64 A. L. R. 881, Annotations at page 883; 46 Am. Juris. 863 and 884. We hold that the

plaintiff offered no admissible evidence of damage and that the court's action in overruling the defendant's objection to evidence of the cost of the furnace and installing air ducts was clearly prejudicial.

Assignment of error No. 9, whereby it is claimed the court erred in overruling defendant's motion for directed verdict for defendant at the conclusion of plaintiff's case must be overruled because the defendant then proceeded with its evidence, waived the right to rely on such motion. City of Zanesville v. Stotts, 88 Oh St 557, Halkias v. Wilkoff Co., 141 Oh St 139, Wilkeson v. Erskine & Son, 145 Oh St 218. The defendant did renew the motion at the conclusion of the taking of all the evidence which motion was overruled but no error is claimed or presented as the result of overruling such motion.

Assignment of error No. 10 concerns the refusal to submit special finding of fact Nos. 1, 2, and 3, as requested by the defendant.. These requests involved the question of whether the plaintiff asked the defendant for advice on the method of installing the furnace; did the defendant participate in its installation and was such furnace in accordance with and approved by the American Gas Association? We hold the court was correct in refusing these requests because answers to these questions would in no way assist in testing the verdict on the sole issue here presented of a breach of warranty of the furnace manufactured and sold by the defendant. It is also true that there is no dispute in the record insofar as there is any evidence dealing with these questions.

Assignment of error No. 13 deals with the charge of the court. Two special instructions before argument were requested by the defendant. The record is incomplete as to what the requests for special charges before argument were as requested by the defendant, such special request not being found in the transcript. It is, therefore, difficult to determine why the court, after reading what was said to be request No. 1, upon objection by the defendant who presented the request said: "I beg your pardon. Withdraw that last portion. The only part that will remain is this." The court then read a charge in some respects contradictory to what had been read, substituting the word manufacturing for the word installation and adding a third clause to the charge. The court then directed the court reporter to strike from the record and the jury to disregard the special instructions thus far given because "there has been a slight change in those instructions." The court then proceeded to give two special instructions before argument. Without the complete transcript, it is impossible to pass on the error here claimed by the defendant. It must be observed that there is considerable confusion in the record as to what was intended by the court under the foregoing circumstances but without a complete record, we must overrule the claimed error.

The defendant complains of the court's charge on the subject of damages. The subject of damages was referred to on two occasions in the charge, first in explaining the issues presented by the pleadings and the admissions therein contained, the court saying that the defendant admitted receiving $241.00 for the furnace; the second occasion was where the court read from §1315.70 R. C. as follows:

"The measure of damages for a breach of warranty is the loss directly and naturally resulting in the ordinary course of events from the breach of warranty."

The court then reread this part of the section and that ended all reference to damages in the charge. It is indeed incomplete and by its incompleteness, inaccurate and prejudicial.

The defendant further complains that the court's charge on the subject of expert witnesses was erroneous and prejudicial for the reason that the jury was instructed that when considering the testimony of expert witnesses, they are to determine the weight to be given to such testimony based on the qualifications of a witness to testify as an expert, which duty the defendant contends comes within the sole province of the court. The defendant misconstrued the meaning of this part of the charge. What the court here told the jury was that they should weigh and determine the evidence of expert witnesses by considering their background, knowledge and experience on the subject, and whether the facts upon which the opinion was based were established by the evidence. The court here correctly stated the rule.

We find that the charge, when considered in its entirety, does not clearly state the issues as pleaded and goes, in some instances, outside the case pleaded by the plaintiff. While some of the complaints about the charge set forth in assignment of error No. 13 cannot be sustained, such as the one on the expert witness, we find, when considering the charge in its entirety that the charge was incomplete, inaccurate and prejudicial to the rights of the defendant requiring this court to sustain this claim of error.

Assignment of error No. 15 is that the judgment is against the manifest weight of the evidence. In considering this question, it will be necessary to set forth the evidence in greater detail than has heretofore been done. It is the claim of the plaintiff that the defendant breached its implied warranty of merchantability of the furnace sold to him because it had a leak in the combustion chamber and the flame of the burner produced excessive oily soot and dangerous gases. In support of this claim, the plaintiff's evidence was to the effect that shortly after the furnace was put in operation (to dry the plaster) oily soot formed on the plaster above the warm air registers and other places about the house; that even though the plaster above the hot air registers was covered with black, oily soot in less than a month after the furnace was started, the house was finished, wallpaper being put on over the sooty spots and the owners moved in. Upon complaints to the plaintiff by the owner about the operation of the furnace, he, the plaintiff, conducted a "Wintergreen" test which he said indicated a leak in the combustion chamber. The defendant was called and notified of the sooty condition and some adjustments were made by it and a cold air return recommended to be placed from one of the four cold air drops to the furnace which was done. The plaintiff and an expert witness presented by the plaintiff testified that there were no primary air intakes for the burners and that the flame was yellow, indicating poor cumbustion. thereby creating soot, and that such poor combustion and the leaky condition of the combustion chamber was the cause of the trouble. They

also testified that the chimney to which the furnace was vented, had a flue, the inside measurements of which were 6 x 8 inches although they did not produce the chimney specifications or have any recollection of actually measuring it. The owner's testimony was also to the effect that upon advice of others, and following his own judgment, he installed a new metal chimney, the same size as the furnace vent. This was done early in 1953. He also testified that the furnace was still in operation at the time of trial in 1954 and no changes had been made except for the chimney and except for replacing one of the electrical controls because the thing started to buzz. The plaintiff testified that on demand from the owner, he paid back all the money he had received for the installation, including the cost of the furnace but the owner in his testimony did not mention such demand or acknowledge the return of the money.

The defendant's evidence was to the effect that there was no leak in the combustion chamber as disclosed by a light test which is the approved way to test for a leak in a combustion chamber of a furnace. The test was made three months before the trial of this case in 1955. The original combustion chamber was still in the furnace unchanged and in use. An expert witness for the defendant testified that the owner built the chimney too small to properly vent the furnace, having an inside opening of 3 x 7 inches by measurements made by the witness, which opening was partly obstructed by plaster, and that there were an incinerator and hot water heater operated by gas which were likewise vented to this undersized chimney. This witness testified that the flue opening was wholly inadequate; that the furnace is equipped with a relief draft divert to allow products of combustion to escape in case the flue is obstructed or in the event of a sudden down draft; that over the draft divert, as originally installed and connected to the chimney built by the plaintiff, the ceiling was covered with large quantities of soot, in some places one quarter inch thick; that when the owner put in the new chimney in 1953, the draft divert was moved to the other side of the furnace and that when inspected by the witness in 1955, there was no soot on the ceiling over its (the draft divert) new location. The defendant's experts also testified that the burner furnished for this furnace was of the radiant type which naturally produces a yellow flame, the burner not being constructed with and cannot use a primary air intake; that either the insufficient size of the chimney vent or the blocking of air to the combustion chamber would cause soot to form when the burner was in operation. This witness also said that after the new chimney of a proper size was installed in 1953, the furnace had operated in a satisfactory way. This statement was not rebutted or denied in any way by the plaintiff. Such conflict as there is in the evidence as above detailed, when considered with the undisputed fact that the furnace, as installed, except for venting it to a new chimney, had been in use for over five and one-half years before this case came to trial and two years since the new chimney was installed, so that under all the circumstances, no other conclusion could be reached, but that a judgment for the plaintiff could not be sustained and is against the manifest weight of the evidence.

The remaining assignments of error, Nos. 11, 12, 14 and 16, which concern the overruling of defendant's motion for new trial, its motion for judgment non obstante veredicto, that the judgment is contrary to law, and other errors manifest on the face of the record, will be sustained for the reason that the petition does not state a cause of action and for the further reason that the plaintiff failed to present any evidence that he suffered any damage.

For the foregoing reasons, the judgment is reversed and final judgment entered for the defendant. Exceptions noted. Order see journal.

KOVACHY, PJ, HURD, J, concur.